UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Alexis Bailly Vineyard, Inc., and<br>The Next Chapter Winery, LLC,<br><br>                    Plaintiffs,<br><br>v.<br><br>John Harrington, *in his official capacity as Commissioner of the Minnesota Department of Public Safety*,<br><br>                    Defendant. | Case No. 17-cv-0913 (WMW/HB)<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

This matter is before the Court on the parties' cross-motions for summary judgment. (Dkts. 49, 51.) The Court previously granted Defendant's motion for summary judgment on jurisdictional grounds for lack of standing and, therefore, did not address the merits of Plaintiffs' claims. The United States Court of Appeals for the Eighth Circuit reversed that decision, concluding that Plaintiffs have standing to pursue their claims, and remanded the case to this Court to address the merits of Plaintiffs' claims. *Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774 (8th Cir. 2019). For the reasons addressed below, Defendant's motion for summary judgment is denied and Plaintiffs' motion for summary judgment is granted.

## BACKGROUND

Minnesota employs a three-tier alcohol-distribution system. Under this system, separate licenses are required for the manufacture, wholesale distribution, and retail sale of alcoholic beverages, including wine. *See* Minn. Stat. § 340A.301. This system

prevents businesses from holding multiple types of licenses, limiting each business's operations to either manufacturing, wholesale distribution, or retail transactions.[1] *See id.* For example, a wine manufacturer must sell its product to wholesalers and cannot sell its product directly to retailers or consumers. *See id.*, subdivs. 8(a), 10.

Farm wineries are exempt from the requirements of the three-tier system under the Minnesota Farm Wineries Act (the Act), Minn. Stat. § 340A.315. A farm winery is "a winery operated by the owner of a Minnesota farm and producing table, sparkling, or fortified wines from grapes, grape juice, other fruit bases, or honey with a majority of the ingredients grown or produced in Minnesota." Minn. Stat. § 340A.101, subdiv. 11. A licensed farm winery is permitted to sell its products directly to retailers and consumers. Minn. Stat. § 340A.315, subdiv. 2. To qualify as a farm winery under the Act, a license-holder must, among other requirements, pay an annual fee, produce 75,000 or fewer gallons of wine annually, and operate on agricultural land. Minn. Stat. § 340A.315, subdivs. 1, 2, 9. In addition, the Act requires a farm winery to produce wine "with a majority of the ingredients grown or produced in Minnesota" (the in-state requirement). Minn. Stat. § 340A.101, subdiv. 11.

If Minnesota-grown or Minnesota-produced ingredients are "not available in quantities sufficient to constitute a majority" of the wine produced by a farm winery in a given year, the farm winery may apply for an exemption from the in-state requirement by submitting an affidavit to the Commissioner of the Minnesota Department of Public

---

[1] There are limited exceptions to the multiple-license prohibition, none of which is relevant to this lawsuit.

2

Safety (Commissioner). Minn. Stat. § 340A.315, subdiv. 4. If the Commissioner agrees with the applicant, the farm winery may use imported ingredients for one year, "after which time the farm winery must use the required amount of Minnesota products" unless the farm winery files a new affidavit. *Id.* Acceptable reasons for seeking an exemption include, but are not limited to, weather-related crop loss or the desire to produce varietals that require grapes not grown in Minnesota.

Plaintiffs Alexis Bailly Vineyard, Inc. (Alexis Bailly), and The Next Chapter Winery, LLC (Next Chapter) (collectively, Plaintiffs), are Minnesota farm wineries that seek to expand their business operations. Plaintiffs allege that they cannot consistently obtain the necessary quantity and quality of wine ingredients to support expanding their operations if 51 percent of the ingredients must originate in Minnesota. Although the Commissioner has never denied Alexis Bailly or Next Chapter a requested exemption, both wineries maintain that the Act's in-state requirement affects their business planning and wine production, including their desire to expand their operations. Plaintiffs want to produce more wine varieties, use higher-quality and lower-cost ingredients that are more reliably available from other states and countries, and increase the volume of wine they produce. For example, Next Chapter contends that, absent the Act's in-state requirement, it would immediately double the amount of grapes and grape juices that Next Chapter purchases from outside Minnesota. Plaintiffs commenced this lawsuit against the Commissioner [2] seeking a declaration that the Act's in-state requirement restricts

---

[2] When Plaintiffs commenced this lawsuit, the Commissioner was Mona Dohman. Because John Harrington subsequently was appointed to serve as Commissioner, he has

3

interstate and foreign commerce, in violation of the United States Constitution, and a permanent injunction against enforcement of the Act's in-state requirement.

The Court previously granted Defendant's motion for summary judgment on April 9, 2018, concluding that Plaintiffs lack standing and, therefore, this Court lacks jurisdiction. Accordingly, the Court did not consider the parties' alternative summary-judgment arguments addressing the merits of Plaintiffs' claims. The Eighth Circuit reversed that decision, concluding that Plaintiffs have standing to pursue their claims, and remanded the case for this Court to consider the merits of Plaintiffs' claims. *Alexis Bailly*, 931 F.3d at 780. Currently before the Court are the parties' renewed cross-motions for summary judgment.

## ANALYSIS

Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, a district court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014). When asserting that a fact is genuinely disputed, the nonmoving party

---

been substituted as the Defendant in this case. *See* Fed. R. Civ. P. 25(d) (providing that substitution of a former official named as a party in his or her official capacity is automatic).

4

must "submit affidavits, depositions, answers to interrogatories, or admissions on file and designate specific facts" in support of that assertion. *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831–32 (8th Cir. 2008); *see also* Fed. R. Civ. P. 56(c)(1)(A).

Plaintiffs contend that the Act's in-state requirement violates both the interstate dormant Commerce Clause and the foreign dormant Commerce Clause. The Court addresses each argument in turn.

## I.    Interstate Dormant Commerce Clause

The Commerce Clause in Article I, Section 8, of the United States Constitution grants Congress the power to regulate interstate commerce. U.S. Const. art. I, § 8, cl. 3. In addition to granting this power to Congress, the Commerce Clause "has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 98 (1994); *see also S. Dakota Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 592 (8th Cir. 2003) ("The dormant Commerce Clause is the negative implication of the Commerce Clause: states may not enact laws that discriminate against or unduly burden interstate commerce."). State laws violate the dormant Commerce Clause "if they mandate 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Granholm v. Heald*, 544 U.S. 460, 472 (quoting *Or. Waste*, 511 U.S. at 99).

"A state law that is challenged on dormant Commerce Clause grounds is subject to a two-tiered analysis." *Hazeltine*, 340 F.3d at 593. First, a court must determine whether the statute "overtly discriminates against interstate commerce." *R & M Oil & Supply,*

5

*Inc. v. Saunders*, 307 F.3d 731, 734 (8th Cir. 2002) (internal quotation marks omitted). "A statute 'overtly discriminates' if it is discriminatory on its face, in its purpose, or through its effects." *Id.* If the statute overtly discriminates, it is subject to "the strictest scrutiny" and "it is *per se* invalid unless the [government] can demonstrate, under rigorous scrutiny, that [it has] no other means to advance a legitimate local interest." *Hazeltine*, 340 F.3d at 593 (internal quotation marks omitted). If a court determines that the statute is *not* overtly discriminatory, the court proceeds to the second tier of the analysis, under which the statute is invalidated as unconstitutional "only if the burden [the statute] imposes on interstate commerce 'is clearly excessive in relation to its putative local benefits.' " *Id.* (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

### A.  Overt Discrimination

Plaintiffs argue that the Act's in-state requirement is *per se* invalid because the requirement is overtly discriminatory on its face, in its purpose, and in its effects. A statute that discriminates against interstate commerce in any one of these three ways is *per se* invalid. *Id.* The Commissioner counters that the Act's in-state requirement is not overtly discriminatory on its face, in its purpose, or in its effects.

Plaintiffs first contend that the Act's in-state requirement is facially discriminatory because it expressly applies disparate treatment to their use of in-state and out-of-state wine components. A statute is facially discriminatory when it expressly favors a local interest over out-of-state interests. *U & I Sanitation v. City of Columbus*, 205 F.3d 1063, 1069 (8th Cir. 2000). For example, it is well-established that a law is facially

discriminatory if it imposes a monetary surcharge or tax on a transaction that crosses state lines that is higher than the surcharge or tax imposed on a similar transaction that occurs entirely within the state. *Or. Waste*, 511 U.S. at 99. Moreover, a law that discriminates between in-state and out-of-state economic interests is impermissible regardless of the *degree* of disparate treatment because "the magnitude and scope of the discrimination have no bearing on the determinative question," which is "whether discrimination has occurred." *Assoc. Indus. of Mo. v. Lohman*, 511 U.S. 641, 650 (1994); *accord Fulton Corp. v. Faulkner*, 516 U.S. 325, 333 n.3 (1996). The fact that a law directly regulates only in-state actors or activities does not prevent a court from concluding that the law is facially discriminatory to out-of-state economic interests. *See, e.g.*, *Jones v. Gale*, 470 F.3d 1261, 1267–70 (8th Cir. 2006) (concluding that state law banning corporate ownership of farmland unless corporate designee resides on land was discriminatory on its face even though the law regulated only in-state land).

      Here, the Commissioner is correct that the Act's in-state requirement does not impose a tax or surcharge on any transaction that crosses state lines. But the Act nonetheless expressly penalizes interstate transactions by making a farm winery license contingent on a farm winery purchasing most of its winemaking ingredients from entities within Minnesota. As a prerequisite to licensure, the Act mandates disparate treatment of in-state and out-of-state winemaking ingredients, favoring the former and disfavoring the latter. The Commissioner's contention that the Act merely regulates the in-state production and sale of wine is misleading because it focuses on the production and sale of wine while ignoring the procurement of ingredients necessary to produce wine. The

7

fact that the Act "does not favor Minnesotan farm wineries over other states' wineries" might be true. But that fact is inconsequential to the analysis because the Act *does* favor Minnesota growers and producers of winemaking ingredients, as well as Minnesota wineries that use mostly in-state ingredients.

In summary, a law is discriminatory on its face if it expressly imposes "differential treatment of in-state and out-of-state economic interest that benefits the former and burdens the latter." *Id.* at 1269 (quoting *Hazeltine*, 340 F.3d at 593)). Here, the Act's in-state requirement expressly favors and benefits in-state economic interests—namely, in-state growers and producers of winemaking ingredients as well as wineries that use mostly in-state ingredients—while disfavoring and burdening those same economic interests outside of Minnesota. Consequently, the Act's in-state requirement is discriminatory on its face. In light of this conclusion, the Court need not address Plaintiffs' alternative arguments that the Act's in-state requirement is discriminatory in its purpose and effects.

### B.   Strict Scrutiny

The second step in analyzing a challenge under the dormant Commerce Clause is to apply the appropriate degree of scrutiny. *SDDS, Inc. v. South Dakota*, 47 F.3d 263, 268 (8th Cir. 1995). If, as here, the challenged law is overtly discriminatory, it is *per se* invalid and subject to strict scrutiny. *Id.* "Once strict scrutiny is triggered, 'the burden falls on the State to justify [the statute] both in terms of the local benefits flowing from the statute and the unavailability of a nondiscriminatory alternative adequate to preserve the local interests at stake.' " *Id.* at 271 (quoting *Hunt v. Wash. State Apple Advert.*

*Comm'n*, 432 U.S. 333, 353 (1977)).  The focus of this strict-scrutiny analysis "does not concern the strength of the interest advanced by the challenged law." *Hazeltine*, 340 F.3d at 597.  Instead, "the question is whether reasonable non-discriminatory alternatives exist to advance the interests." *Id.*  It is the state's burden to demonstrate that no such alternative exists. *Id.*  Typically, "[t]he only way that discriminatory state action can withstand this level of scrutiny is if the state demonstrates that the out-of-state articles are more dangerous than are in-state articles." *SDDS, Inc.*, 47 F.3d at 271 n.8 (citing *Chem. Waste Mgmt., Inc. v. Hunt*, 504 U.S. 334, 343–44 (1992); *Maine v. Taylor*, 477 U.S. 131, 131 (1986)).

Plaintiffs argue that the Act's in-state requirement cannot survive strict scrutiny because the Commissioner has not demonstrated that a non-discriminatory state interest exists, "let alone a lack of alternative means in achieving that interest."  The Commissioner does not directly address the strict-scrutiny analysis.  Instead, the Commissioner insists that strict scrutiny does not apply.  The Commissioner's failure to address the strict-scrutiny analysis is fatal to the Commissioner's position, given that the burden rests with the Commissioner.  Nonetheless, the record *also* supports Plaintiffs' position that the Act's in-state requirement cannot survive strict scrutiny.

The Commissioner asserts that Minnesota has an interest in promoting "an agro-tourism industry for wine growers and producers on Minnesota farm land."  But even though a state may have a legitimate interest in "encouraging domestic industry" within the state, "the Commerce Clause stands as a limitation on the means by which a State can constitutionally seek to achieve that goal." *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263,

9

271 (1984). There is no suggestion in the record or the parties' arguments that the Act's in-state requirement serves any interest other than favoring Minnesota's economic interests over similar out-of-state economic interests.[3] The Commissioner has neither argued nor presented evidence that out-of-state winemaking ingredients are more dangerous than in-state winemaking ingredients. And the Act itself belies any such suggestion, as the Act permits a licensed farm winery to use out-of-state ingredients so long as those ingredients do not exceed 49 percent of the final product. Moreover, the Commissioner makes no effort even to suggest that there are no reasonable nondiscriminatory alternative methods of promoting an "agro-tourism industry" for wine in Minnesota.

For the foregoing reasons, the Act's in-state requirement is unconstitutional under the interstate dormant Commerce Clause.

## II.     Foreign Dormant Commerce Clause

Plaintiffs also assert that the Act's in-state requirement violates the foreign dormant Commerce Clause because it prevents them from freely purchasing winemaking

---

[3] The Commissioner argues that Minnesota's three-tier alcohol-distribution system is constitutionally legitimate. The Twenty-First Amendment "gives each State leeway in choosing the alcohol-related public health and safety measures that its citizens find desirable," but that leeway "is not a license to impose all manner of protectionist restrictions on commerce in alcoholic beverages." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2457 (2019) (holding that Tennessee's residency requirement for retail liquor license applicants was unconstitutional as it "blatantly favors the State's residents and has little relationship to public health and safety"); *accord Granholm*, 544 U.S. at 488–89. As such, to the extent that the Commissioner relies on its legitimate interest in regulating alcohol through its three-tier alcohol-distribution system, that interest is insufficient to justify discriminatory treatment of out-of-state economic interests that contravene the dormant Commerce Clause.

ingredients from other countries. The Commissioner does not expressly address this argument. But in light of the Court's conclusion that the Act's in-state requirement is facially unconstitutional in violation of the interstate dormant Commerce Clause, the Court need not address whether the Act's in-state requirement also violates the foreign dormant Commerce Clause.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. The motion for summary judgment of Defendant John Harrington, in his official capacity as Commissioner of the Minnesota Department of Public Safety, (Dkt. 49), is **DENIED**.

2. The motion for summary judgment of Plaintiffs Alexis Bailly Vineyard, Inc., and The Next Chapter Winery, LLC, (Dkt. 51), is **GRANTED** as follows:

    a. The Minnesota Farm Wineries Act's requirement that licensed farm wineries use a majority of Minnesota-grown or Minnesota-produced ingredients, as reflected in Minnesota Statutes Sections 340A.101, subdivision 11, and 340A.315, subdivision 4, is **DECLARED** facially unconstitutional as a violation of the interstate dormant Commerce Clause of the United States Constitution.

    b. Defendant John Harrington, in his official capacity as Commissioner of the Minnesota Department of Public Safety, is **PERMANENTLY ENJOINED** from enforcing the Minnesota Farm Wineries Act's

        requirement that licensed farm wineries use a majority of Minnesota-grown or Minnesota-produced ingredients, as reflected in Minnesota Statutes Sections 340A.101, subdivision 11, and 340A.315, subdivision 4.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 31, 2020                                  s/Wilhelmina M. Wright
                                                                        Wilhelmina M. Wright
                                                                        United States District Judge